UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        6:14-cr-46-Orl-40TBS

RICHARD IRIZARRY,

    Defendant.

## ORDER

This case comes before the Court on the Government's Motions to Quash the Subpoena to DEA Records Custodian (Doc. 93) and the Subpoena to the Confidential Source (Doc. 96). The Court has considered the motions and Defendant's response (Doc. 103), and now, for the reasons that follow, the Government's motions are **granted.**

### I. Background[1]

Prior to his arrest in this case, Defendant was a police officer for the City of Titusville Police Department ("TPD"). On December 31, 2013, he and a Drug Enforcement Administration ("DEA") confidential source (the "CS") worked security at a country club in Brevard County, Florida. Defendant knew the CS had previously worked as an informant for law enforcement, but the CS had since earned a reputation for being a drug dealer. While working security, Defendant complained

---

[1] This section is adopted from the Court's November 24, 2014 Order on Defendant's motion to compel discovery. (Doc. 110).

1

about his income and offered to invest in cocaine the CS sold. The next day, the CS reported this meeting to DEA agents.

At a meeting on January 8, 2014 Defendant confirmed to the CS that he wanted to invest in cocaine but said he could not do so until January 31, 2014. In the meantime, Defendant offered to provide the CS with drug test kits used by law enforcement and to provide security during drug deals to ensure that law enforcement and others did not interfere. The next day, Defendant and the CS met again. This time Defendant asked the CS if he was still working for law enforcement and the CS replied no. Defendant also asked how much the CS paid for a kilogram of cocaine, and he wanted to know how the CS transacted drug deals.

On January 13, 2014, Defendant sent the following text message to his superior, TPD Sergeant Little: "I have been approached to be a partner in a cocaine business after I befriended the guy." Sgt. Little met with Defendant to discuss this information. Defendant said he was looking for guidance from his chain of command and that he was going to have lunch with his target that day. Defendant also confirmed that he had offered to invest $3,000 in cocaine, provide security, and monitor police radio traffic during a drug transaction. Sgt. Little believed Defendant was confessing to a crime, and not providing information about a case Defendant was investigating. Sgt. Little said he would need to make some phone calls and get back with Defendant.

Sgt. Little reported the meeting to his supervisors, Lieutenant King and Major Butler, then they contacted DEA agent Pat Campbell. Agent Campbell said he was unaware of an investigation of any TPD officers but he would make some calls. In the meantime, Sgt. Little told Defendant not to meet with the CS. While Sgt. Little and Lt. King were in Maj. Butler's office, they received a call from DEA Group

Supervisor Kyle Kent who said he was Agent Campbell's supervisor and he was aware of the situation. Sgt. Little was then instructed to make contact with Defendant and to record the conversation. Sgt. Little and Defendant met at approximately 1:00 p.m. on January 13, 2014. During the meeting, Defendant shared details of his covert plan and dealings involving the CS.

That evening, Defendant met with the CS. The CS said he had seen a suspicious car and gave Defendant the license plate number. Defendant used the computer in his police vehicle to check the tag number in the Florida Department of Highway Safety and Motor Vehicle Driver and Vehicle Identification Database ("DAVID"). After checking, Defendant told the CS the license plate was registered to a government vehicle. This was not an authorized use of the DAVID system. Before departing, Defendant agreed to provide security during a drug deal that would take place later that month because he was "already crooked." The next day, DEA told TPD it would be kept informed of the status of the investigation to ensure the safety of the community, but TPD would not be included in strategy decisions or be a part of the investigation team.

Law enforcement conducted a sham drug deal between the CS and an undercover officer on January 23, 2014. Defendant provided security for the drug deal, which he did not realize was fake. TPD Chief of Police John Lau and Maj. Butler, who supervised internal affairs, listened to DEA radios during the transaction. After the sham drug deal was completed, the CS dropped $500 of pre-recorded cash in Defendant's patrol car for providing security. The next day, January 24, 2014, Defendant turned the pre-recorded cash into evidence at the TPD and spoke to Lt. King and Sgt. Victor Rodriguez, who supervised the Narcotics Unit. Defendant reported to them that he had witnessed the CS conduct a drug deal on January 23,

3

2014.  Then, Defendant wrote a statement that included some of his activities with the CS.  The statement begins, "On January 23, 2014, at approximately 1047 hours, I received a phone call from [CS] requesting my assistance for security purposes as he conducts a drug transaction [in Titusville]."  Defendant said the CS tried to hand him money, but Defendant insisted the CS drop the money inside his TPD patrol vehicle.

After reading Defendant's statement, TPD advised DEA which dispatched two special agents to interview Defendant.  Defendant told the agents that when the CS brought up cocaine, he pretended that he was unhappy with his income and wanted to invest in cocaine.  Defendant said he never actually planned to invest money in a cocaine deal.  He also told the agents he agreed to provide security for a one kilogram cocaine deal, but did not know the CS was going to pay him $500.  Defendant said he had used his cellular telephone to make a partial recording of the drug deal.  Defendant also said he got involved with the CS because he wanted to make money and prove to TPD narcotics detectives that he could "get a big player in the drug world."  After Defendant was interviewed by the DEA he was placed on administrative leave and TPD Chief John Lau initiated an internal investigation regarding the fake drug deal.

On January 25, 2014, Defendant sent a series of text messages to the CS, eventually stating that he wanted to move forward with their plan.  On February 2, 2014, Defendant and the CS met.  During the meeting, Defendant said he was quitting the police department, offered to return the $500 the CS had paid him, and promised not to tell anyone what the CS was doing.  In addition, Defendant said he was no longer interested in investing in cocaine.

Without further investigation, Defendant was indicted on March 5, 2014, by a federal grand jury.  The next day he was arrested by federal law enforcement officers

4

at the TPD, and Maj. Butler wrote a memorandum stating that the City was considering terminating Defendant due to his arrest by the federal government.  TPD also issued a press release stating that "Police Chief John Lau and other members of his command staff have been working directly with the DEA since January when the department first learned of the allegations ..."

This case is scheduled to be tried by a jury beginning on January 5, 2015. (Docs. 83, 85-86).  At Defendant's request, a subpoena was issued to the DEA Records Custodian to bring to trial a current version of the DEA Agents Manual ("Manual") published by the United States Department of Justice.  (Doc. 93 at 6; Doc. 93-1 at 2).  Defendant also caused a subpoena to be issued to the CS to bring with him to trial his federal income tax returns for the years 2009-2013, including any IRS Form 1099 copies, and any record of payments the CS received from the DEA or any other law enforcement agency.  (Doc. 96 at 6; Doc. 96-1).  The Government has motioned the Court to quash both subpoenas.

II. Applicable Law

"There is no general constitutional right to discovery in a criminal case ..." Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  Discovery in criminal cases is governed by the federal rules (Federal Rule of Criminal Procedure 16), statute (18 U.S.C. § 3500), and the common law (Brady, Giglio, and their progeny).  It is not at all as expansive as discovery in civil cases. United States v. Johnson, 713 F.2d 654, 659 (11th Cir. 1983).

The Government's obligation to provide discovery to criminal defendants is circumscribed by Rule 16 and a defendant may not seek to broaden his rights through the utilization of the Rule 17 subpoena process.  Reid, 2011 WL 5075661, at *3 ("Rule 17(c) does not provide a broad right to discovery for criminal defendants ...

5

The Government's obligation to provide discovery to criminal defendants is explicitly limited to the provisions of FED. R. CRIM. P. 16 ... the Nixon Court recognized that Rule 17(c) cannot be used to expand the scope of discovery beyond the Government's limited obligations ... Rule 17 should not be construed to make the limitations in Rule 16 meaningless.").

Rule 16 imposes on the Government a continuous duty to produce certain material in its "possession, custody, or control," or under the control of anyone acting on its behalf, to the defendant upon request.  FED. R. CIV. P. 16; United States v. Jordan, 316 F.3d 1215, 1249 (11th Cir. 2003); see also United States v. Slawson, Criminal Case No. 1:14-cr-00186-RWS-JFK, 2014 WL 5804191, at *15-16 (N.D. Ga. Nov. 7, 2014) (The Court determined that the Government had a duty to produce Rule 16 material in the possession of the prosecutor or anyone over whom he has authority).  The Rule states in part:

> **Documents and Objects.**  Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) The item is material to preparing the defense;
>
> (ii) The government intends to use the item in its case-in-chief at trial; or
>
> (iii) The item was obtained from or belongs to the defendant.

FED. R. CIV. P. 16(a)(1)(E).  Rule 16(a)(1)(E) is limited by the provisions of Rule 16(a)(2), which provides that,

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of

> reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in [the Jencks Act,] 18 U.S.C. § 3500."

FED. R. CIV. P. 16(a)(2).

Rule 17 permits a party to subpoena a witness to produce "any books, papers, documents, data, or other objects the subpoena designates," either before trial or at trial and before the item is to be offered into evidence. FED. R. CRIM. P. 17(c)(1). To satisfy its burden under Rule 17, the party issuing the subpoena must establish:

> (1) [T]hat the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. 683, 699-700 (1974). A Rule 17 subpoena may be quashed or modified if "compliance would be unreasonable or oppressive." Nixon, 418 U.S. at 698.

### III. Motion to Quash the Subpoena for the DEA Agent Manual (Doc. 93)

Defendant has subpoenaed the DEA Records Custodian to bring a current version of the Manual to the trial. The Government argues that the Manual "is not within the items that are required to be provided to a defendant pursuant to [Rule 16]," and that Defendant's subpoena is an attempt to circumvent Rule 16. (Doc. 93 at 9). Next, the Government argues that Defendant has failed to articulate how the Manual provides a defense to the charges in the indictment. (Id. at 10-11). Lastly,

7

the Government argues that Rule 17 subpoenas may not be used to obtain impeachment material. (Id. at 11-13).

Defendant contends that the Manual is essential to his defense to an element (intent) of the crime charged in the indictment. (Doc. 103 at 11-12) ("This will be used to demonstrate a failure to follow protocol does not establish the element of intent which is necessary to prove a violation of the law beyond a reasonable doubt,"). But apart from this conclusory statement Defendant has not demonstrated how the Manual itself is material to his defense. The Court is not persuaded by Defendant's argument and finds that he has not established that the information contained in the Manual provides a defense to any of the charges in the indictment or that the Government's case-in-chief hinges on its contents. See United States v. Norita, 708 F. Supp.2d 1043, 1054 (D. N. Mar. I. 2010); see also United States v. Armstrong, 517 U.S. 456, 462 (1996).[2]

While Defendant has not demonstrated how the Manual itself is material to his defense, he has explained why he believes the information in the Manual may be useful to impeach the credibility of the DEA agents:

> [F]acts related to the handling of the confidential informant and facts related to the confidential informant's motive and bias are going to be significant for purposes of enabling a jury to assess the confidential informant's credibility ... mishandling of the CS is integral to demonstrating a lack of credibility as to the DEA agents, the CS, and the investigation in general.

(Doc. 103 at 11). Impeachment evidence is not within the purview of Rule 16. Accordingly, the Government's motion to quash is granted on this ground.

---

[2] This case is not controlling but the Court finds that it is persuasive.

8

Defendant's assertion that the Manual is "material" to his defense is predicated on an assumption that the Government will argue that he failed to follow proper protocol. (Doc. 103 at 11) ("[T]he Government is *expected* to fault [Defendant] for not following procedure; therefore, [Defendant] should also be able to affirmatively establish that Government agents also did not follow proper procedures and protocol. This will be used to demonstrate a failure to follow protocol does not establish the element of intent ...") (emphasis added). Defendant's supposition is not enough to permit the discovery. On the contrary, Defendant's assumption invites the conclusion that the subpoena is meant to aid in a fishing expedition which the Court will not allow.

Nixon requires that the information requested in a Rule 17 subpoena be relevant, admissible, and specific. 418 U.S. at 699-700 n.12. Defendant has not made an adequate showing to satisfy this requirement. United States v. Silverman, 745 F.2d 1386, 1397 (11th Cir. 1984) ("If the subpoena application was made in good faith, the subpoena power of rule 17(c) only extends to 'specifically identified documents that will be admissible as evidence at trial ...'"); see also United States v. Blake, Case No. 13-80054-CR-MARRA/MATTHEWMAN, 2014 U.S. Dist. LEXIS 64092, at *11-12 (S.D. Fla. Mar. 25, 2014). Therefore, the Government's motion to quash is also granted on this ground.

### IV. Motion to Quash the Subpoena for Tax Returns (Doc. 96)

The Government admits paying the CS more than $48,000 for his services in this and other cases. (Doc. 94 at 12; Doc. 103 at 6). Now, Defendant is seeking the CS' tax records to show any additional benefits the CS has received and/or any possible motive or bias the CS may have. (Doc. 103 at 7, 9). However, Defendant has failed to establish that his request is within the purview of Rule 16. He has not

shown that this impeachment evidence is "material to preparing the defense," intended to be used in the Government's case-in-chief, or an item belonging to the Defendant, as required by FED. R. CIV. P. 16(a)(1)(E). For Rule 17 purposes, Defendant has not argued that the CS' tax records would be admissible as evidence at trial. See Silverman, 745 F.2d at 1397. Therefore the Government's motion to quash this subpoena is granted.

### V. Conclusion

Upon due consideration it is **ORDERED** that:

1. The Government's Motion to Quash Subpoena to DEA Records Custodian (Doc. 93) is **GRANTED.**

2. The Government's Motion to Quash Subpoena to Confidential Source (Doc. 96) is **GRANTED.**

**DONE AND ORDERED** in Orlando, Florida, on December 3, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies to All Counsel