# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

v.  Case No. 6:14-CR-46-ORL-40TBS

**RICHARD IRIZARRY**

_____/

## SENTENCING MEMORANDUM and MOTION FOR DOWNWARD VARIANCE

### I. INTRODUCTION

Richard Irizarry is a good man - a devoted father, a forgiven husband and an honorably discharged veteran and public servant. Having been found guilty of Counts One and Three by a jury, he is before this Court against the backdrop of an otherwise admirable life. In a brief period of time - between December 31, 2013 and January 24, 2014 - he crossed the line from legality to illegality; he struggled with that illegality which immediately brought him back to the honorable gentleman he has always been. This Court must now determine a fair and just sentence for Mr. Irizarry's conduct.

It is anticipated that the Probation Office will recommend a sentence within the guideline range of 78 - 97 months. Undersigned counsel maintains that a guideline sentence fails to account for the sentencing manipulation/entrapment aspect of this case, fails to account for the application of the safety valve provision within the sentencing guidelines, fails to account for the gross sentencing disparity created by the Government in allowing Luis Collazo, a 30-40 kilogram level drug dealer with a prior criminal history, to walk away from being prosecuted for his involvement in the drug world while recommending a 6 ½-8 year + sentence for a decorated veteran whose conduct for a brief amount of time crossed the line of legality. Meanwhile the Government is

1

asking this Court for an upward departure to 120 months. Such a request is tantamount to asking this court to ignore the history and characteristics of Mr. Irizarry and the jury's verdict of not guilty in connection with the firearm's non-relation to the "drug" trafficking offense.

## II. **DISCUSSION**

**A.        18 U.S.C. § 3553(a) and the Sentencing Guidelines**

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]" 18 U.S.C. § 3553(a).[1]

In the post-*Booker* regime, courts are to consider all of the § 3553(a) factors "without any

---

[1]Those factors are:
>    1. [T]he nature and circumstances of the offense and the history and characteristics of the defendant.
>
>    2. the need for the sentence imposed–
>        a. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>
>        b.  to afford adequate deterrence to criminal conduct;
>
>        c.  to protect the public from further crimes of the defendant; and
>
>        d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,
>
>    3. The kinds of sentences available;
>
>    4. The kinds of sentence and the sentencing range established [by the Sentencing Guidelines];
>
>    5.  Any pertinent policy statement...;
>
>    6.  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>    7.  The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(2).

2

thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007); *see also, e.g., United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)(*en banc*)("Nor should the Guidelines factor be given more or less weight than any other. While the Guidelines are to be respectfully considered, they are one factor among the §3553(a) factors that are to be taken into account in arriving at an appropriate sentence."); *Nelson v. United States,* 129 S. Ct 890, 892 (2009)("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.").

In determining the weight to be given to the Guidelines in a particular case, a court may consider whether the Guidelines at issue are the product of the type of empirical process that underlies most of the Sentencing Commissions's work and that justifies the degree of deference usually given to that work. *See*, *e.g., Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (discussing this in the context of "[t]he crack cocaine Guidelines," which "do not exemplify the Commission's exercise of its characteristic institutional role"; noting that as to these Guidelines the Commission "did not take account of 'empirical data and national experience'"). Where the Commission has not employed its usual empirical approach, "guidelines and policy statements embodying [the resulting] judgments deserve less deference than the sentencing guidelines normally attract." *United States v. Rodriguez*, 527 F.3d 221, 227 (1st Cir. 2008)(citing *Kimbrough*).

**B.      Analysis of Relevant § 3553(a) Factors**[2]

    **1.      Mr. Irizarry's History and Characteristics and the Nature and Circumstances of the Offense**

    **a.  Mr. Richard Irizarry**

Whether one reads through Richard Irizarry's military file, his Titusville Police Department file, or letters in support of him, the unquestionable characteristics that jump off the pages are his compassionate and caring nature.

Undersigned counsel is confident this Court recalls the fact that Richard Irizarry has served our country for nearly 22 years in an enlisted capacity for the United States Marine Corps. His primary specialties were Motor Transportation Operation Chief, Career Planner and Equal Opportunity Advisor. During his service for the United States, Gunnery Sgt. (highest rank) Irizarry was the recipient of several medals, badges, citations and campaign ribbons. The Appendix provides a summary of those awards. One example is from language related to a Navy and Marine Corps Achievement Medal, "while serving as career planner for 2D Battalion, 8th Marines, 2D Marine Division . . . selected as the Career Planner of the Year Staff Sergeant Irizarry *significantly improved the morale* . . . during a period of high operational tempo and personnel turbulence." "Staff Sergeant Irizarry made it a point to make himself visible and readily available to every Marine." (*See* Exhibit 1).

Following his exemplary military service Richard Irizarry joined the Titusville Police Department. As this Court may well recall, Officer Irizarry was complimented and noticed not for his stellar police work - recall the testimony of Sgt. Rodriguez (Deposition pg. 76, Lines 8-25), but

---

[2] The following factors are excluded from this analysis: 18 U.S.C. 3553(a)(5)("any pertinent policy statement") and (a)(7)("the need to provide restitution to any victims of the offense"). These do not appear to be relevant to the present case, and the Probation Office did not reference them in the Pre-Sentence Report.

rather for his compassionate and caring style of policing. "Richard, this is but one of many letters our department has received from citizens within Titusville and abroad in regard to your gentle manner, professionalism, and sympathetic concern for those you have helped during calls for service. . . . Thank you Richard, for showing our citizens the kinder gentler side of law enforcement." (*See* Exhibit 2 [*Defendant's Trial Exhibit 23*]). Even when Officer Richard Irizarry was awarded the "Officer of the Month" in July 2013, it was for his service to citizens and their needs *outside* the legal system when he gathered over $1,200.00 in school supply donations." (*See* Exhibit 3)

Senior Pastor Rev. Jonathan Partsch's letter in support of Richard Irizarry echoes the above sentiment; but, it goes a step further in focusing on the future as well. Significantly, Rev. Partsch noted that he is "so convinced that Richard Irizarry is not the evil corrupt man that some say he is, so much in fact, that [he] is willing to put [his] good name and reputation as pastor and minister of the gospel on the line for him. (Something I have never done for anyone else in my 25 years as a minister.)" That last sentence is extremely telling about the character of the man who stands before the court. He undoubtedly made mistakes, but he is facing the challenges that come from his mistakes with honor and with his usual *find a way to help others* mentality. (*See* Exhibit 4).

Retired USMC Master Gunnery Sergeant Tony E. Robertson's letter provides this Court with yet another perspective of the man who will stand before this Court on March 31st. When Master Gunnery Sgt. Robertson was promoted "to serve as the Marine Corps Senior Equal Opportunity Advisor and Equal Opportunity Program Manager . . . [he] wasted no time selecting Richard Irizarry to fill the vacancy [of joint service instructor at the Defense Equal Opportunity Management Institute.]" "Richard was an outstanding instructor; he positively influenced students from all branches of the military..." (*See* Exhibit 5).

While some men focus on their career, Richard Irizarry's sphere of influence went beyond his work. When one reads the letters from Mr. Irizarry's family, one comes to realize that the man standing before this Court is a man of faith, a man committed to his family, committed to his country and does his best to be an example to those around him. (*See* Exhibits 6, 7 and 8).

**b. The Offense**

The facts of the offense were tried to this Court during the week of January 5-9, 2015 and are not repeated here at length, with the exception of some additional context regarding the sentencing manipulation/entrapment aspect of this case and some additional context to demonstrate that Mr. Irizarry should be considered for "safety valve" treatment under the Guidelines.

**i. Sentencing Manipulation/Entrapment**[3]**.**

In the case at bar, the issue of "drug" weight in connection with the January 23, 2014 "sham" drug deal was entirely controlled by the Government and Luis Collazo. The set up for the "sham" cocaine transaction occurred on January 19, 2014[4]. In fact, Richard Irizarry had no role in

---

[3] With the gravamen of the crime being a public corruption type of offense, an alternative guideline which may provide this Court with guidance is U.S.S.G. §2C1.1. In essence Officer Irizarry was paid a bribe of $500.00 to look away/notify Luis Collazo of the presence of other police. Using U.S.S.G. §2C1.1(a)(1) the base offense level would be 14. Section 2C1.1(b)(3) would be applicable (*see* Application Note 4(B), *a law enforcement officer* is considered a "*public official who holds a sensitive position*") thus raising the offense level to 18. Pursuant to Application Note 6, U.S.S.G.§3B1.3 is not applied. With a Total Offense Level of 18 and a Criminal History Category of I, the advisory guideline range would be 27-33 months.

[4] Collazo: Because I talked to them. So like, I said, Well, wait, I have to find out the days. So like we're set for, the best days are from Monday to Thursday. Uh what we're going to do is that that's, that takes, it's going to take, it's about five minutes. I'm going to grab aaaa... a donkey, a kilo of . . .
    Irizarry: Yeah
    Collazo: ...of what talks a lot, the parrot.
    Irizarry: Yeah.
    Collazo: And that's why the boss told me that it pays 500 bucks.
    Irizarry : Wow! OK.

6

establishing the "weight" of the sham cocaine. Moreover he had no history or involvement in cocaine which would suggest that he had the ability to commit the crime on his own. What transpired on January 19, 2014, was that Luis Collazo called Irizarry and asked him what days he was working the following week. (*See* Exhibit 9, D008608 - Portion of Transcription of Gov't recording). The story Luis Collazo gave to Irizarry which led up to the January 23, 2014 transaction was that Irizarry was simply there to watch a transaction that was unrelated to previous discussions[5]. Even after the transaction, Collazo made it clear to Irizarry that the transaction that he just watched was "Nelson's deal." (*See* Exhibit 9, Portion of Transcription of Government recording, D008576).

In the case at bar, the ease with which the government was able to manipulate the "drug" weight should make this Court wary of using base offense level 24. In similar circumstances where the Government controlled the drug weight, i.e. fake stash house robbery cases, courts have noted that "a hard look" needs to be taken "to ensure that the proposed drug weight was within the scope of the defendant's ambition and means." *See generally, United States v. Briggs*, 623 F.3d 724 (9th Cir. 2010). "[I]t is impermissible for the government to 'structure sting operations in such a way as to maximize the sentences imposed on defendants' without regard for the defendant's culpability or ability to commit the crime on his own." *United States v. Schafer*, 625 F.3d 629, 640 (9th Cir. 2010) (quoting *Staufer*, 38 F.3d at 1107). "In those cases where sentencing entrapment occurs, *the amount of drugs used in calculating the defendant's sentence should be reduced by the amount that*

---

(*See* Exhibit 9 - Portion of Transcription of Gov't recording, D008610)

[5] It should be noted that the initial discussion about Irizarry investing $3,000.00 for cocaine was in connection with the purchase of 250 grams of cocaine.
Collazo: OK, You have 3000 to invest. So we'll take it so, we'll take it...we'll take it in parts. We'll try to get...you put in three. . . . I'll put in . . . three and fi, five, six, seven, eight. I'll put in four, five, six, seven. **We'll start with a quarter there**. Then, when it comes, I'll show it to you so you can look at it, like this, you see it, that it's real, that it's not fake. (*See* Exhibit 9 - Portion of Transcription of Gov't recording, D008491)(Emphasis added).

7

*'flow[s] from [the] entrapment.'" Briggs*, 623 F.3d at 729 (quoting *United States v. Naranjo*, 52 F.3d 245, 250 (9th Cir. 1995)). In the case at bar, Richard Irizarry maintains that use of base offense level 24 is clearly inappropriate since it is entirely the product of the Government's active manipulation. If this Court felt compelled to utilize the drug guideline instead of the public corruption guideline, then the defendant maintains that the 1/4 kilo (250 gram) negotiation referenced in footnote 5 would be the best starting place for establishing the Base Offense Level[6].

### ii. Safety Valve.

At no time during any of the discussions between Luis Collazo and Richard Irizarry was there a mention of guns, a need for guns or that there was any concern that would make a firearm relevant to Irizarry's offense. In short, Irizarry was to provide Luis Collazo information about the presence of police.

>     Irizarry: What do you need from me for you to be safe, really safe?
>     Collazo: The cars, the cars that they're using, I know that they're using an Escape (UI), a gray Escape, they're using a, a Honda minivan...
>     Irizarry: (UI)
>     Collazo: . . . Odyssey, they have a Cadillac. They have ...
>     Irizarry: What kind of . . .
>     Collazo: . . . and they got a gray Celica, they have a gray Celica, they have the Lumina that's all messed up and a (UI).

(*See* Exhibit 9, Portion of Transcription of Gov't recording, D008501-8502).

In light of the fact that Richard Irizarry reached out to the Government prior to sentencing and truthfully provided to the Government all information and evidence he had concerning the offense on February 12, 2015 [§3553(f)(5)][7], Irizarry maintains that this Court should sentence him

---

[6] Using 250 grams of cocaine to establish the base offense level, the base offense level would be 18. With the application of U.S.S.G. §2D1.1(b)(1) "+2", U.S.S.G. §2D1.1(b)(17) "-2" and U.S.S.G. §3B1.3 "+2", the Total Offense Level would be 20. Using a Criminal History Category of I, the advisory guidelines would be 33-41 months.

[7] The Government asserts that Officer Irizarry has not met his burden on this issue. Undersigned counsel maintains that the Government was given ample opportunity to question

8

without regard for any applicable statutory minimum sentence. 18 U.S.C. § 3553(f). Richard Irizarry has zero (0) criminal history points [§3553(f)(1)]; the offense did not result in death or serious bodily injury to any person [§3553(f)(3)]; and, Irizarry was not an organizer, leader, manager, or supervisor of others in the offense [§3553(f)(4)]. Lastly, Irizarry did not use violence in connection with the offense [§3553(f)(2){clause 1}], credible threats of violence in connection with the offense [§3553(f)(2){clause 2}] or possess a firearm or other dangerous weapon in connection with the offense.[§3553(f)(2){clause 3}]. Unlike USSG § 2D1.1(b)(1) which merely requires one to possess a dangerous weapon, clause 3 of 3553(f)(2) requires proof that a firearm was possessed *in connection* with the offense. (Emphasis added). In essence, to not apply the safety valve provision, this Court must find that Officer Irizarry's Glock, which was worn as part of his uniform pursuant to Titusville Police Department policy (*Testimony of Major David Butler*), was actually connected to the offense[8]. No evidence was presented during the course of the trial which

---

Officer Irizarry during the proffer. At no time during the proffer was there any suggestion by the Government that his proffer was not truthful. If necessary, undersigned counsel is prepared to testify about the February 12, 2015 proffer. Undersigned counsel was the only party during the proffer that was taking notes.

[8] The Government in its Sentencing Memorandum (DOC 197) cites to *United States v. Audain*, 254 F.3d 1286, 1290 (11th Cir. 2001) in support of its position that Irizarry does not merit safety valve consideration. (*See* Gov't Sentencing Memorandum, pg 10). A significant distinction in the facts of *Audain* and the facts in the case at bar is that Audain was challenging the application of USSG§2D1.1(b)(1): In *Audain* the court noted that "Gourgue testified that Audain was armed 'at times.' The Court went on to note that "it appears that Audain *exercised discretion* in choosing to be armed on those occasions. . . Audain's exercise of descretion lends considerable weight to the district court's finding that it was not clearly improbable that Audain's carrying of his firearm was connected to Gourgue's drug offense." Reliance on *Audain* is misplaced since the "clearly improbable" standard does not apply to the safety valve question. *See United States v. Carillo-Ayala* 713 F.3d 82 (11th Cir 2013)("In effect, the government benefits from a rebuttable presumption that a firearm, if present–just present, not present in proximity to drugs–is "connected with the offense." The defendant must disprove a connection with the drug offense to the extent of showing it is "clearly improbable" they were symbiotic... (*New Paragraph*) **The safety valve works differently**. . . We hold that not all defendants who receive the enhancment under §2D1.1(b)(1) are precluded from relief under subsection (a)(2) of the safety valve."  In short the "clearly improbable" standard is not the standard this court must use.

9

would suggest, nor did the jury find, that Officer Irizarry's firearm was possessed "in connection" with the offense. For all the foregoing reasons, undersigned counsel respectfully requests this Court to find that Richard Irizarry is "safety valve" eligible.

### 2. Section 3553(a)(2) Factors

The defense recognizes that factors such as "reflect[ing] the seriousness of the offense," "promot[ing] respect for the law," "provid[ing] just punishment for the offense," and "afford[ing] adequate deterrence to criminal conduct," 18 U.S.C. §3553(a)(2), are often pursued through lengthy prison sentences. Courts have recognized, however, that other available sanctions are far from trivial and in appropriate cases can - especially in combination with the collateral consequences of conviction - meet the goals of sentencing.

The collateral consequences for Richard Irizarry, a man with an impeccable 25 year career which included 22 years in the military and 3+ years with the Titusville Police Department prior to the 25 days that spanned December 31, 2013-January 24, 2014, have been enormous. Not only has Richard Irizarry been incarcerated since January 9, 2015; he has lost his job, he will be forever known as a convicted felon (which in turn means that he has lost his right to bear arms), he has lost his right to vote, and he has lost his right to hold public office. Because of the unique circumstances of the offense, undersigned counsel maintains that a sentence below the mandatory minimum and below the advisory sentencing guideline range will be a sufficient but not greater than necessary

---

Significantly, the *Carillo-Ayala* court went on to analyze the U.S. Supreme Court case *Smith v. United States,* 508 U.S. 223 (1993) to determine what the phrase "in connection with" meant. "...such a relation or connection exists where 'the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred." In the case at bar, there was never a mention of Officer Irizarry's firearm much less any suggestion that he should display it or discharge it to help the offense. Moreover, this is not a case where Officer Irizarry had discretion to wear his firearm, it was policy; he was required to wear the firearm. Lastly, it should be noted that Officer Irizarry's firearm was never in close proximity to any drugs in this case.

sentence to meet the goals of sentencing set for in Title 18 U.S.C. § 3553(a)(2).

As to the need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)( C), defense counsel respectfully submits that the facts before this Court - including Mr. Irizarry's unblemished prior record, his history of service to his country and his compassion for his fellow man in his small corner of the world - indicate a particularly low risk of such future criminal conduct.

### 3. The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

While a law enforcement officer's conduct of crossing the line of legality into illegality must be punished, an inescapable fact that is unquestionably a large part of this case is the disparity created by the Government and their charging decisions. The Government's charging decision, i.e. seeking a mandatory minimum sentence for a man who has never been involved in drug dealing while allowing a previously convicted felon who has admittedly moved $900,000.00 - $1,200,000.00 worth of cocaine (30-40 kilograms) to go uncharged, has set up an enormous sentencing disparity which this Court can remedy by making a finding that Mr. Irizarry is safety valve eligible and then granting a downward variance.

## CONCLUSION

In light of the fact that Mr. Irizarry does not fit the profile of a kilo level drug trafficker, but to the contrary has served his country honorably for over 20 years; the fact that applying the sentencing guidelines for drug trafficking in a rigid manner to the facts before this court would encourage the Government to manipulate sentencing facts in future cases, and the fact this Court can remedy a potential sentencing disparity, undersigned counsel maintains that a sentence below the mandatory minimum and below the advisory sentencing guideline range is sufficient but not greater than necessary for the particular facts of Mr. Irizarry's case.

Respectfully submitted,

**DONNA LEE ELM**
**FEDERAL DEFENDER**

*/s/ Stephen Baer*
Stephen U. Baer, AFD
TX State Bar Number 24025953
Assistant Federal Defender
201 S. Orange Ave., Suite 300
Orlando, Florida 32801
(407) 648-6338
(407) 648-6095 FAX
Email: Stephen_Baer@fd.org

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Sentencing Memorandum, and Motion for Downward Variance was electronically filed and made available to AUSA Vincent Citro at the U.S. Attorney's Office through this Court's ECF system on this 24th day of March 2015.

*/s/ Stephen U. Baer*
Stephen U. Baer
Assistant Federal Defender
